# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

LEON E. WOOD                                                                                    PLAINTIFF

V.                                                         CIVIL ACTION NO.: 1:06CV203-SA-SAA

COMMISSIONER OF
SOCIAL SECURITY                                                                               DEFENDANT

## ORDER ADOPTING REPORT AND RECOMMENDATION

Comes now before this Court, Plaintiff Leon E. Wood's objections to the magistrate judge's second Report and Recommendation dated February 5, 2008. After reviewing the objections, response, rules, and authorities, the Court OVERRULES Plaintiff's objections and ADOPTS the magistrate judge's Report and Recommendation.

### I. Factual and Procedural Background

The Plaintiff was born on July 29, 1950 and was fifty-five years old at the time of the administrative hearing in this case on September 27, 2005. He completed high school in 1969. The Plaintiff's past relevant work has been as a truck driver, clean up worker, farm laborer, forklift operator, small engine mechanic, and lawn mower assembler. He filed his application for disability benefits on July 14, 2004. He alleges a disability onset date of March 30, 2002, due to back problems, memory loss, fainting spells, a spot on his skull, and two crushed vertebrae as well as a pinched nerve in his neck. The Social Security Administration denied Plaintiff's application initially and on reconsideration. Following a hearing on September 27, 2005, the Administrative Law Judge ("ALJ") entered a decision dated February 2, 2006, finding that the Plaintiff was not disabled. The Plaintiff filed a request for review of that decision with the Appeals Council. On May 19, 2006, the Appeals Council denied Plaintiff's request for review, and the Plaintiff filed the present action with

this Court. The ALJ's hearing decision is now ripe for review.

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920 (1998). The burden rests upon the Plaintiff throughout the first four steps of this five-step process to prove disability, and if the Plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five. Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). First, Plaintiff must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b) (1998). Second, the Plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c) (1998). At step three, the ALJ must conclude the Plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[1] Fourth, the Plaintiff bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e) (1998). If the Plaintiff is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering Plaintiff's residual functional capacity, age, education, and past work experience, that he is capable of performing other work. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1) (1998). If the Commissioner proves other work exists which the Plaintiff can perform, the Plaintiff is given the chance to prove he cannot, in fact, perform that work. Muse, 925 F.2d. at 789.

In her decision, the ALJ determined that the Plaintiff suffered from neck and back problems

---

[1] 20 C.F.R. §§ 404.1520(d), 416.920(d) (1998). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (1998).

and eosinophillic granuloma of the skull, both of which constitute "severe" impairments under the terms of the Act. (Tr. 18, Finding No. 3). However, the ALJ found that the Plaintiff did not suffer from any impairment or combination of impairments which meet or equal the requirements of the Listings set forth in Appendix 1, Subpart P, Regulation No. 4 of the Regulations. (Tr. 18, Finding No. 4). The Appeals Council found no basis for changing the ALJ's decision.

On appeal to this Court the Plaintiff made the following argument to the magistrate judge:

Error was committed in failing to consider the totality of the severity of the plaintiff [sic] several impairments. The Administrative Law Judge's decision is contradicted by substantial medical evidence provided in the record. . . .

The magistrate judge recommended that the ALJ's decision be affirmed. Specifically, the magistrate determined that the ALJ properly considered the totality of the Plaintiff's impairments in reaching her decision.

The Plaintiff objected to the magistrate's Report and Recommendation. Plaintiff raised the following objections: (1) the ALJ erred in relying on the consultative report by Dr. Byers; (2) the ALJ did not permit sufficient cross-examination by his attorney at the hearing; and (3) the ALJ should have given Dr. Johnson's evaluation equal consideration. These objections will be addressed below.

## II. Standard of Review

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, Richardson v. Perales, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). The Fifth Circuit has further stated that substantial evidence

> must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'

Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not re-weigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. Hollis v. Bowen, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commission's decision. Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994); Harrell, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994).

### III. Discussion

A.  Dr. Byers' Evaluation/MRI Report

Plaintiff contends that the ALJ erred in relying on the consultative report by Dr. Byers. Plaintiff alleges Dr. Byers ignored both his subjective claims and a large portion of the radiological examination, which was an MRI from August 2004. Specifically, Plaintiff contends at least three pages of the MRI report are missing from the record, and that Dr. Byers contradicts himself in his assessment by stating that the MRI prepared in 2004 shows no evidence of nerve compression.

4

Dr. Byers' medical assessment form evidences that he considered Plaintiff's complaints of pain, his daily activities, and limitations in making his assessment. Moreover, Dr. Byers' assessment demonstrates he relied on Plaintiff's medical history and his own clinical examination of Plaintiff in reaching his conclusions. (Tr. 142).

As to the MRI report, Plaintiff has not shown that any portion of the MRI report is missing from the record. First, he claims that at least three pages of that report are missing from the record and should have been included as Exhibit 3F. However, the exhibit is clearly labeled as being 2 pages, the exhibit is internally cohesive with no gaps apparent gaps in the exhibit, and the second page is clearly labeled as the "last page" of the document. (Tr. 138-139). The Plaintiff has made no effort to show that he was prejudiced by any missing evidence or even if there is any missing evidence. See Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) (there must be a showing of prejudice before a claimant's right to due process is violated to the degree that the case must be remanded for further development of the record because evidentiary gaps result in unfairness or clear prejudice).

In an attempt to discredit Dr. Byers' assessment, Plaintiff contends that Dr. Byers' contradicts himself in his assessment by stating that the MRI prepared in 2004 shows no evidence of nerve damage. Plaintiff states this conclusion is contrary to the results stated in the MRI report. While Dr. Byers' acknowledged that the MRI showed a "compression fracture," he was entirely correct that the report nowhere mentions "nerve root compression." (Tr. 138-139, 144). After reviewing the record and the ALJ's decision, the Court finds the ALJ correctly based her residual functional capacity assessment on the report of Dr. Byers; therefore, Plaintiff's objections on this basis are denied.

B.     Bias

Plaintiff's attorney contends that the ALJ "would not allow questioning" of his witness during his administrative hearing, and further asserts that the ALJ did not permit him to ask the vocational expert hypothetical questions during the hearing. The Plaintiff concluded that the ALJ evidenced bias and prejudice against him and his testimony.

The Fifth Circuit, in addressing the alleged bias of an ALJ during a Social Security administrative hearing stated:

> "Judicial remarks during the course of a trial that are critical or disproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," unless "they reveal such a high degree of favortism or antagonism as to make fair judgment seem impossible."

Brown v. Apfel, 192 F.3d 492, 500 (5th Cir. 2000) (quoting Liteky v. United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)).

From review of the record, the transcript reveals the ALJ questioned Plaintiff about his subjective limitations (Tr. 190), his living situation and daily activities (Tr. 191), and other relevant evidence. Notably, the hearing transcript does not indicate that Plaintiff's attorney had any objection to his questioning being halted, and Plaintiff's attorney did not point to any further evidence before the administration or before this Court that he wished to elicit from his client. (Tr. 195). Plaintiff has failed to show how any further testimony could and would have adduced evidence that may have altered the result.

Plaintiff's contention that he was not permitted to cross-examine the vocational expert is not support by the hearing transcript. In fact, the ALJ attempted to assist and guide Plaintiff's questioning of the vocational expert, but Plaintiff's attorney eventually conceded he was asking

6

the exact same hypothetical question that the ALJ previously posed. The ALJ merely prohibited the duplicative questioning of the vocational expert.

The Court does not find that the ALJ acted with bias or partiality. Plaintiff has not revealed any particular remarks or actions by the ALJ which show such a high degree of favoritism or antagonism as to make a fair judgment impossible. Moreover, the Court does not find that the ALJ failed to afford Plaintiff a full and fair hearing.

C.  Dr. Johnson's Evaluation

Plaintiff renews his claim that the ALJ should have given Dr. Johnson's report equal consideration. Plaintiff notes the disparity of the residual functional capacity assessment completed by Dr. Dwight A. Johnson in September 2005 and the medical source statement completed by Dr. Paul Byers in May 2005. Dr. Byers examined Plaintiff on May 14, 2005, and found that Plaintiff is capable of lifting no more than 50 pounds at a time, or 25 pounds frequently, and has no limitations in standing, walking or sitting or in postural activities or physical functions. (Tr. 145-148). Contrastly, Dr. Johnson found that plaintiff could lift less than 10 pounds, could stand for less than 2 hours in an eight hour workday, must alternate sitting and standing to relieve pain, was limited in postural activities to only occasionally balancing, stooping, kneeling, crouching, and crawling, was limited in reaching and handling and was in his near vision, as well as experiencing various environmental limitations. (Tr. 150-157). In sum, Dr. Byers limited Plaintiff to work at a medium exertion level, and in contrast, Dr. Johnson found that he could not perform even a sedentary level.

In her opinion, the ALJ discussed the findings of consultative examining physicians Dr.

Glenn Bennett[2] and Dr. Paul Byers, as well as those of Dr. Johnson. She noted that Plaintiff gave inconsistent information to the physicians and "[a]lthough the inconsistent information provided by [Plaintiff] may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable." (Tr. 16). Further, the ALJ noted that Dr. Johnson did not have a treatment relationship with the Plaintiff, recorded no objective findings, and did not specify the objective medical evidence upon which he relied in formulating his assessment. (Tr. 14). Articulating these and other specific reasons, the ALJ afforded little weight to Dr. Johnson's assessment that the Plaintiff was unable to perform sedentary work. Id.

Social Security Ruling 96-8p provides that when determining a claimant's residual functional capacity, the ALJ "must always consider and address medical source opinions." SSR-96-8p, p.7. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Id. Social Security Ruling 96-5 states that "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commission." SSR-96-5, p.2. "Opinions from any medical source on issues reserved to the Commissioner must never be ignored." Id. at p.3. Thus, when making a determination regarding a claimant's residual functional capacity – a matter which is exclusively within the purview of the ALJ – the regulations require that the ALJ carefully consider medical source opinions, particularly all medical assessments and medical source statements from sources who have actually examined

---

[2] Dr. Bennett conducted a consultative exam in October 2004 and determined that Plaintiff "complains of a lot of neck and back pain. However, he had a full range of motion of all joints and had normal examination on this date." (Tr. 141). Dr. Bennett did not complete a medical source statement.

the individual.  Id. at p. 2.

When more than one physician has provided medical information, the ALJ must consider all information provided by each source in order to properly assess a plaintiff's residual functional capacity.  Id.  After considering all such medical evidence, the ALJ may determine that certain specific medical findings should be afforded more weight than other medical evidence.  An ALJ may properly afford lesser weight to the opinion where the opinions are inadequately explained, not supported by specific findings, contradicted by the opinions of other treating sources, contradicted by the reports of consulting physicians, and not supported by objective clinical laboratory findings.  3 SOC. SEC. LAW & PRAC. § 37:88.

In the present case, the ALJ stated that she considered all the medical evidence in the record, and it is apparent that she did so.  The ALJ provided detailed information about the Plaintiff's symptoms, his impairments, and the effects those impairments had on the Plaintiff as a whole.  (Tr. 14, 15, 17).  She discussed the treatment notes of Dr. Byers and Dr. Bennett and observed that Dr. Johnson made a cursory examination of Plaintiff but provided no treatment notes to support his findings.  The ALJ properly pointed to medical evidence contrary to Dr. Johnson's opinions, identified multiple inconsistencies, both within the Plaintiff's testimony and between that testimony and the record, and reasonably concluded that Plaintiff lacked credibility.  These findings supply additional support for her reliance on Dr. Byers' findings.  Accordingly, the Court holds that the ALJ provided a well-supported basis for affording limited weight to Dr. Johnson's assessment and for relying primarily on the opinions of Dr. Byers; therefore, Plaintiff's objections on this basis are denied.

## IV. Conclusion

The ALJ properly relied on Dr. Byers' evaluation, permitted sufficient opportunity for Plaintiff's attorney's questions, and afforded proper weight to Dr. Johnson's evaluation. Accordingly, Plaintiff has presented no objection which changes the magistrate judge's analysis in her Report and Recommendation.

THEREFORE, it is ORDERED that

(1) the Plaintiff's objections to the Report and Recommendation of the United States Magistrate Judge are OVERRULED;

(2) the Magistrate's February 5, 2008, Report and Recommendation [21] is APPROVED AND ADOPTED as the opinion of this Court; and

(3) this case is CLOSED.

SO ORDERED this the 26th day of August 2008.

                                          **/s/ Sharion Aycock**
                                          **UNITED STATES DISTRICT JUDGE**